**In re CASUAL MALE CORP., Debtor.**

**Longacre Master Fund, Ltd., Plaintiff,**

**v.**

**Telecheck Services, Inc., Defendant.**

No. 01–41404 (REG).
Adversary No. 03–6930.

United States Bankruptcy Court,
S.D. New York.

Oct. 21, 2004.

Emmet Marvin & Martin, LLP, by Martin Eisenberg, Esq. (argued), New York, NY, for plaintiff Longacre Master Fund, Ltd.

Baker & Hostetler LLP, by Matthew H. Charity, Esq. (argued), New York, NY, for defendant TeleCheck Services, Inc.

### DECISION AND ORDER ON REQUEST FOR REMAND

ROBERT E. GERBER, Bankruptcy Judge.

■ This adversary proceeding, under the umbrella of the chapter 11 case of debtor Casual Male Corp. and its affiliates (the "Debtors")—a contract dispute between the alleged buyer and seller of a claim against the Debtors' estate—was filed by the plaintiff Longacre Master Fund, Ltd. ("Longacre") against defendant TeleCheck Services, Inc. ("TeleCheck") in the Supreme Court of New York County. TeleCheck subsequently removed the proceeding to the district court pursuant to 28 U.S.C § 1452(a), from which it was thereafter referred to this Court. Longacre opposed the application for removal, and in a status conference before this Court, after the submission of letter briefs to the district court on the relevant issues, requested remand of the action back to state court upon the papers previously submitted.[1]

Upon consideration of the matter, the Court concludes that it has subject matter jurisdiction, but that remand on equitable grounds is appropriate.

#### Facts

The facts relevant to this decision—primarily, the issues to be determined in the adversary proceeding and the procedural history of the bankruptcy case—are undisputed, and the Court thus had no need for an evidentiary hearing.[2] On or about May 18, 2001, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. After a number of section 363 sales, one of which was of all of their remaining assets to Designs, Inc. (the "Buyer"), pursuant to this Court's order dated May 7, 2002 (the "Sale Order"), the Debtors, together with their Creditors' Committee, confirmed a plan of reorganization on November 18, 2003.

TeleCheck is, or at least was, a creditor in the Debtors' chapter 11 case. It filed a statement of cure amounts on April 25, 2002, seeking approximately $700,000, rep-

---

1. The matter was heard in this relatively informal fashion without objection. In any event, the Court may raise the question of remand under § 1452(b) *sua sponte* under 11 U.S.C. § 105(a). *See Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913, 927 (Bankr.E.D.Cal.1995) (but noting that due process nonetheless requires that the par-

ties be afforded the opportunity to be heard on the question of remand). Here, the parties were given the opportunity to brief the issues in letter briefs submitted to the district court prior to the referral to this Court.

2. Nor did either party request one.

resenting the pre- and post-petition amounts assertedly necessary for the cure of defaults incident to the assumption and assignment of TeleCheck's contracts to the Buyer. TeleCheck moved to compel payment of the cure costs on April 22, 2003, but subsequently withdrew the motion because the Debtors, as part of a settlement, made a payment to TeleCheck.

Longacre's involvement in this bankruptcy case began with the filing of its October 16, 2002 notice of intent to purchase certain pre-petition general unsecured claims. Longacre included in Exhibit A to its notice, which listed the claims that were the subject of this purchase, a claim said to have originally been held by TeleCheck in the amount of $58,747. TeleCheck filed a response to Longacre's notice on November 19, 2002, stating that "there is no agreement by TeleCheck to sell or transfer any part of TeleCheck's claim in this case to LMF." [3]

Longacre thereafter brought suit against TeleCheck on April 2, 2003 in the Supreme Court of the State of New York, County of New York, asserting breach of contract and implied contractual obligations. The complaint sought damages arising from TeleCheck's alleged breach of a written trade confirmation (the "Agreement") under which TeleCheck allegedly agreed to sell a claim it held against the Debtors. Longacre also sought damages for breach of implied obligations to negotiate in good faith and deal fairly in connec-

tion with the purchase and sale of the claim.[4]

TeleCheck filed a notice of removal in the state court, and filed removal papers in the district court. Very shortly thereafter, Longacre objected to the removal, and at the request of the district court, the two parties filed letter briefs on the question of whether the case should be heard in federal or state court. Before the remand and related issues were decided in the district court, the action was referred to this Court.

*Discussion*

*I.*

*A.*

■ Section 1334 of the Judicial Code, 28 U.S.C. § 1334, confers subject matter jurisdiction on the district courts (and hence bankruptcy courts) with respect to bankruptcy matters. Section 1334(b) confers three types of jurisdictional authority over *proceedings* (which include adversary proceedings such as this one): [5]

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings [1] *arising under* title 11, or [2] *arising in* or [3] *related to* cases under title 11.[6]

"Arising under" jurisdiction relates to federal question claims of a particular type— specifically, those federal questions that have their origin in title 11 of the United States Code (*i.e.*, the Bankruptcy Code),[7]

---

3. TeleCheck's Response to Longacre's Notice of Intent (November 19, 2002), ECF # 1199 in Main Case Docket. The reference to "LMF" was, of course, to Longacre.

4. *Complaint, Longacre Master Fund, Ltd. v. TeleCheck Services, Inc.*, Supreme Court of the State of New York, County of New York, Index No. 106234/03.

5. Section 1334(a) provides that the district courts have jurisdiction over *cases* under title 11, a matter that is not relevant here.

6. Emphasis added.

7. Thus, it has been held that "[t]o determine whether a proceeding 'arises under' title 11, we apply the same test used for deciding whether a civil action presents a federal question under 28 U.S.C. § 1331." *In re Poplar*

and where relief is sought based upon a right created by title 11.[8]

■ Case law in this district states that a claim "arises in" bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy case because it has no existence outside of bankruptcy.[9] Other decisions have described the test more broadly—that a proceeding "arises in" bankruptcy when it is not based on any right expressly created by title 11, but "would have no practical existence but for the bankruptcy."[10] Claims against the estate are in this category, even pre-petition ones based on state law.[11] Many "arising under" matters litigated in bankruptcy cases also fall in the "arising in" category, and vice-versa.

■ "Related to" jurisdiction applies to those matters that do not meet the criteria for the first two categories but that nevertheless relate to a bankruptcy case. The principles underlying "related

to" subject matter jurisdiction determinations were discussed at some length in this Court's decisions in *ML Media Partners, L.P. v. Century/ML Cable Venture (In re Adelphia Communications Corp.)*[12] and *Blackacre Bridge Capital, LLC v. Korff (In re River Center Holdings, LLC)*,[13] and will not be repeated at length here. Under the Second Circuit's decision in *In re Cuyahoga Equipment Corp.*,[14] the test applied in this district and elsewhere to establish "related to" jurisdiction under section 1334(b) is the existence of a "conceivable effect" on the bankruptcy estate.

### B.

■ Under the standards outlined above, it is plain that Longacre's suit "arises in" a bankruptcy case because this claims trading dispute "would have no practical existence but for the bankruptcy." If the Debtors had not filed bankruptcy petitions, there would be no claims against the estate to sell. TeleCheck's

---

*Run Five Ltd. P'ship*, 192 B.R. 848, 855 (Bankr.E.D.Va.1995) (Bostetter, C.J.) (*"Poplar Run Five"*) (citations omitted).

**8.** See, e.g., *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987); *National City Bank v. Coopers and Lybrand*, 802 F.2d 990, 994 (8th Cir.1986); *In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y.1992) (Broderick, J.); *Buena Vista Television, et al. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 307 B.R. 404, 413 (Bankr.S.D.N.Y.2004) (Gerber, J.); *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792, 801 (Bankr.S.D.N.Y.2003) (Gerber, J.) (*"Sterling Optical"*).

**9.** See *Riverside Nursing Home*, 144 B.R. at 955; *176–60 Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.*, 209 B.R. 307, 311, n. 2 (S.D.N.Y.1997) (Sprizzo, J.).

**10.** *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 86 F.3d 364, 372 (4th Cir.1996); see also, e.g., *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir.2003) (same, quoting *A.H. Robins*); *Poplar Run*

*Five*, 192 B.R. at 857 (same, and noting that it applied to matters involving pre-petition claims, even when based on state law).

**11.** See *Poplar Run Five*, 192 B.R. at 857:

A proceeding that involves state-law questions may still fall within the "core" jurisdiction of this Court if it "arises in" a case under title 11.... One example of a proceeding "arising in" a bankruptcy case is a matter involving the allowance or disallowance of claims. The Bankruptcy Code requires a creditor to file a proof of claim as the first step for receiving a distribution from the estate. See 11 U.S.C. §§ 501, 502(a). Although the Bankruptcy Code authorizes such filing, the issue of whether the claim is bona fide, and thus allowable, may ultimately turn on state law.

**12.** 285 B.R. 127, 136–137 (Bankr.S.D.N.Y.2002) (Gerber, J.).

**13.** 288 B.R. 59, 64–65 (Bankr.S.D.N.Y.2003) (Gerber, J.).

**14.** 980 F.2d 110, 114–115 (2d Cir.1992).

claim, and thus Longacre's cause of action, would not exist.

The Fourth Circuit's opinion in *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*[15] is illustrative of the standard. The appellants in the case, attorneys for mass tort claimants of the chapter 11 debtor, argued that § 1334 did not grant the district court jurisdiction to modify a contingent fee arrangement between the attorneys and their clients. The dispute focused on an order that the district court had issued reducing the amount of fees to be collected on pro rata distributions from a claimants' trust created by the debtor's plan of reorganization. The Fourth Circuit held that the claim was a matter both "arising in" and "related to" a case under title 11:

> Without the bankruptcy, there would have been no pro rata distribution. This is unique to this bankruptcy proceeding. The district court's order limiting the percent that the plaintiffs' may receive in fees out of these pro rata distributions could not have occurred but for the bankruptcy and, therefore, said order "arises in" the bankruptcy, and the court has jurisdiction under § 1334(b).[16]

Thus, Longacre's suit against TeleCheck "arises in" a bankruptcy case under title 11, and this Court has subject matter jurisdiction over the action under § 1334(b).

## II.

### A.

▮ However, even where a district or bankruptcy court has subject matter jurisdiction over a removed proceeding under 28 U.S.C. § 1334, it still has the power, in its discretion, to remand the proceeding to state court. Another provision of the Judicial Code, 28 U.S.C. § 1452(b), grants district courts (and hence bankruptcy courts) the discretion to remand "on any equitable ground" proceedings previously removed by a party to the proceeding. That statute provides in relevant part:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

The caselaw interpreting this provision has fleshed out the meaning of "any equitable ground," which is not defined in § 1452(b). The factors relevant to a determination as to whether to remand under § 1452(b) are sometimes called the *"Drexel* factors," named after a decision in which they were articulated, *Drexel Burnham Lambert Group, Inc., v. Vigilant Ins. Co. (In re Drexel Burnham Lambert Group, Inc.)*.[17] The *Drexel* factors are:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.[18]

---

**15.** 86 F.3d 364 (4th Cir.1996).

**16.** *Id.* at 372; *see also Grausz v. Englander,* 321 F.3d 467, 471–472 (4th Cir.2003) (holding that the court had "arising in" jurisdiction over a chapter 11 debtor's malpractice claim against the law firm representing him in the bankruptcy case).

**17.** 130 B.R. 405, 407 (S.D.N.Y.1991) (Edelstein, J.)

**18.** *Renaissance Cosmetics, Inc. v. Development Specialists, Inc.,* 277 B.R. 5, 14 (S.D.N.Y. 2002). *See also Arstk, Inc. v. Audre Recognition Systems, Inc.,* 1996 WL 229883, at *5 (S.D.N.Y. May 7, 1996); *Riverside Nursing Home,* 144 B.R. at 956 (Broderick, U.S.D.J.

### (1) Efficient Administration of the Estate

■ Remand of Longacre's claims would have no effect on the efficient administration of the Debtors' estate. The Debtors have already paid TeleCheck's claim; thus, the distribution on the claim has already left the Debtors' estate. Longacre seeks monetary damages from TeleCheck directly, and based on Longacre's representations that it is seeking recovery only from TeleCheck, the Debtors do not oppose, and indeed support, remand of the dispute to the New York County Supreme Court.[19]

In at least two cases, this Court has found remand to be inappropriate where there was more than one pending, and interrelated, proceeding.[20] When that is so, it presents not only efficiency concerns—as two separate courts would be deciding identical or nearly identical issues—but also fairness concerns, should one party find itself estopped based on determinations in the other proceeding. The present case, which involves a single suit between two non-debtors, raises neither of these concerns.

Likewise, this is a not a controversy between the alleged transferee and transferor of a claim under Fed. R. Bankr.P. 3001(e)(2), where determination of the controversy is necessary or desirable to direct the estate as to the appropriate recipient of the distribution on the claim, or to determine the voting rights with respect to the claim. Here, the distribution has already been made; the claim has already been voted, and, indeed, the Debtors' plan had already been confirmed by the time that the remand controversy was argued. There is no particular administrative advantage to the estate, or vis-à-vis the needs and concerns of other creditors, to adjudicate this controversy here.

### (2) Extent to Which Issues of State Law Predominate

Longacre's complaint asserts classic state law causes of action for breach of contract. This matter is, strictly speaking, a core matter, but not because it involves substantive rights under title 11. Rather, it is a core matter only because the controversy happens to involve the Court's "arising in" jurisdiction. As Chief Judge Bernstein has explained,[21] in a different context,[22] certain proceedings in bankruptcy court may be "core" not because they involve rights or issues under title 11, but by reason of the procedural context in which they are asserted. This

adopting recommendation of Schwartzberg, U.S.B.J.).

**19.** Statement of Debtors Relating to Dispute Between Two Non–Debtors (March 16, 2004), ECF # 1781 in Main Case Docket, at ¶¶ 2,4 ("There are no pending issues affecting these estates. It is irrefutable that the dispute at issue is solely between two non-debtors.... [T]he Debtors support remanding the Non–Debtor Dispute to the New York County Supreme Court....")

**20.** See ML Media Partners, 285 B.R. at 144–46; River Center Holdings, 288 B.R. at 69–70.

**21.** See In re Hagerstown Fiber Ltd. P'ship, 277 B.R. 181, 203 (Bankr.S.D.N.Y.2002):

Many proceedings are procedurally core; they are garden variety pre-petition contract disputes dubbed core because of how the dispute arises or gets resolved. Objections to proofs of claim and counterclaims asserted by the estate ... exemplify this type of matter.

**22.** The context there was whether or not provisions in a contract obligating the parties to arbitrate their disputes were applicable to objections to claims asserted under state law, where such objections gave rise to core proceedings because they were "procedurally core."

matter, involving state law claims, is a classic example. It is "procedurally core," but not "substantively core." That is not all that important, because determination of whether or not a matter is core is not determinative of decisions as to discretionary remand or discretionary abstention.[23] What is more important is that state law issues predominate.

TeleCheck argues that the terms of the alleged contract would have granted Longacre the right to negotiate payment of the claim *with the Debtors,* not payment of a claim by TeleCheck, and that because the claim was incorporated into the larger cure amount TeleCheck sought from the Debtors, valuation of the transfer would require interpretation of this Court's Sale Order. But assuming all of those things to be true, the essence of the controversy is nevertheless the contractual rights and duties, if any, of Longacre and TeleCheck as between each other, under state law. The fact that the winner of that dispute might have had rights against the Debtors under federal law does not make issues of federal law predominate in what is in essence a state law contract dispute between alleged transferor and transferee.

Judge Gropper of this Court addressed an analogous set of facts in *In re NTL, Inc.,*[24] where parties to several lawsuits moved for abstention in cases commenced in the bankruptcy court and for remand of cases removed from the state court. The parties to the lawsuits were buyers and sellers in the "when-issued" market, who had entered into arrangements for the purchase and sale of new common stock of the debtor company that was to be issued under the plan of reorganization. When the bankruptcy court approved a modification to the plan reducing the number of shares to be issued from 200 million to 50 million, the sellers of the stock sought a declaratory judgment that the trades be adjusted to reflect the modification and reformation of the trades.[25]

Considering first the motions to abstain,[26] Judge Gropper wrote:

> The Debtors' interest in the litigation between non-debtors as to the question of contract enforcement or reformation is much more attenuated, especially as [the sellers] have, at least for the moment, abandoned their effort to bring the Debtors into the litigation as additional defendants or as third-party defendants. The issues now are fundamentally State law issues.[27]

---

**23.** It should be remembered that 28 U.S.C. § 1452 applies equally to remand decisions by district judges, as to whom 28 U.S.C. § 157 "core" and "non-core" issues are irrelevant. *See also* 28 U.S.C. § 1334(c)(1):

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**24.** 295 B.R. 706 (Bankr.S.D.N.Y.2003) (Gropper, J.)

**25.** *Id.* at 714.

**26.** It is well established that the analysis that applies to discretionary abstention is very

similar to that considered in connection with equitable remand. *See Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,* 1995 WL 489711, at *9 (S.D.N.Y. Aug.15, 1995) (Preska, J.) (*"Nemsa"*) (if abstention under § 1334(c)(1) in removed actions, where there is no alternate state court action, does apply, "then I must consider virtually the same factors as I did in connection with the motion to remand pursuant to § 1452(b)."); *Riverside Nursing Home,* 144 B.R. at 957 ("[t]he equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c).").

**27.** *NTL,* 295 B.R. at 717.

The court noted that the dispute between the buyers and sellers involved core bankruptcy matters, specifically the modification of the Debtors' plan and the implementation of an earlier order of the court. Nonetheless,

> [T]he fact that a plan or bankruptcy court order is involved in a controversy does not mean that State law is superceded.... [T]he real issues today do not involve the interpretation of the order, but rather its effect on the rights of parties to private contracts.[28]

TeleCheck also points to language in the complaint stating that the Agreement called for "customary and standard provisions for the purchase and sale of claims in bankruptcy proceedings," and that a legal conclusion on the meaning of such language is best undertaken by a Bankruptcy Court.[29] The Court agrees only in part. While this Court might have a greater initial familiarity with provisions that are customary in claims trading agreements than a state court might, that difference is not likely to be material. This Court is confident that the state court can be quickly educated in this respect if necessary.

The present dispute, although it may in part relate to the Sale Order signed by this Court, likewise overwhelmingly involves issues of state law. And although the alleged agreement may have granted Longacre the right to negotiate with the Debtors, it is clear from the complaint that the sole relief sought is for breach of that agreement by TeleCheck. Thus, this factor weighs in favor of remanding the case to the state court.[30]

### (3) Difficulty or Unsettled Nature of Applicable State Law

The applicable state law here is not particularly unsettled, and thus this factor is not of material significance. This Court does not believe that there is any material difference in the ability of state and federal courts to decide issues of contract law— in contrast, for example, to matters involving family law, probate law, condemnation law, or other specialized areas of the law not regularly addressed in the federal courts.[31] In light of that, this factor weighs neither in favor, nor against, remand of this proceeding.

### (4) Comity

As this Court noted in *Adelphia* and *River Center*, comity "focuses on the state's interest in developing its law and applying its law to its citizens."[32] Despite TeleCheck's assertions to the contrary, it is clear to this Court that Longacre's complaint alleges only a state law breach of contract claim. New York state law would likewise apply to any defenses available to TeleCheck.[33] Of course, this is not a situation where New York law must be applied

---

28. *Id.*

29. TeleCheck Letter Brief, July 28, 2003, ECF # 8 in Adversary Proceeding Docket.

30. This Court has noted, in at least two previous cases, that bankruptcy judges address issues of state law on a regular basis, and thus this factor should not sway the balance in favor of remand when other factors that this Court views as more significant weigh in the opposite direction. *See Adelphia*, 285 B.R. at 145–146; *River Center Holdings*, 288 B.R. at 69–70. That situation is distinct from the

present one, where the other relevant factors also weigh in favor of remand.

31. *See Adelphia*, 285 B.R. at 146.

32. *Id.* (citing *Renaissance Cosmetics*, 277 B.R. at 16; *River Center Holdings*, 288 B.R. at 70.

33. *See* TeleCheck Answer at ¶ 17 (defendant's second affirmative defense is that "alleged agent for TeleCheck lacked all apparent and real authority to enter into the agreement alleged by plaintiff.").

by reason of a strong state or local interest in regulating the matter in controversy—as it might, for example, in connection with landlord-tenant matters in the City or State of New York. On balance, this factor is a wash or weighs very slightly in favor of remand.

### (5) Degree of Relatedness or Remoteness to Main Bankruptcy Case

The issues in this proceeding are not closely related to the Debtors' bankruptcy case, and are barely related at all. Even assuming that TeleCheck is correct in its assertion that adjudication of this dispute will require interpretation of this Court's Sale Order, or conclusions as to "customary and standard provisions for the purchase and sale of claims in bankruptcy proceedings," the fact remains that Longacre is seeking relief solely from TeleCheck, a non-debtor party, and the outcome will have no effect on the Casual Male estate or its other creditors. As Judge Gropper concluded under similar facts in *NTL*, "[s]tate law issues predominate, and at present, the issues in the CRT proceeding are relatively remote to the issues in the bankruptcy case." [34] The facts of the present case are indeed even less related than those of the dispute in *NTL*, which arose out of a modification to the debtors' reorganization plan that had been authorized by the bankruptcy court. And once more, the Court notes that this is not a situation where a determination must be made under Fed. R. Bankr.P. 3001(e)(2), as a predicate for further action in connection with the administration of the estate. Thus, the Court finds that this factor likewise weighs in favor of remand.

### (6) Existence of Right to Jury Trial

Neither side has expressed a desire for a jury trial, or argued the significance of this factor. The Court considers it, accordingly, to be a wash.

### (7) Prejudice to Involuntarily Removed Defendants

This factor is inapplicable here, as the one and only defendant, TeleCheck, voluntarily removed the action to this Court.

* * *

Consequently, the Court concludes that the above factors weigh in favor of equitable remand. As Judge Gropper noted in *NTL*,

> [E]ven if bankruptcy jurisdiction exists at this stage of disputes among the parties who traded securities of the Debtors in the "when-issued" market, the real issue is the proper settlement basis of trades among non-debtor contracting parties.[35]

Here, despite the existence of subject matter jurisdiction, the dispute primarily concerns the rights of two non-debtor parties under the alleged contract. Under these circumstances, equitable remand is appropriate.

### Conclusion

For the foregoing reasons, this adversary proceeding is remanded to the Supreme Court of the State of New York, New York County.

SO ORDERED.

---

34.  *NTL*, 295 B.R. at 719.

35.  *Id.* (discussing a similar holding in *Bayside Fuel Oil Corp. v. Savino (In re Savino Oil &* *Heating Co.)*, 1992 WL 118801, 1992 U.S. Dist. LEXIS 7703 (E.D.N.Y. May 21, 1992)).