158

LOTHIAN CASSIDY, LLC, and Israel Grossman, Plaintiffs,

v.

LOTHIAN EXPLORATION & DEVELOPMENT II, L.P., et al., Defendants.

No. 12 Civ. 710 (VM)

United States District Court, S.D. New York.

Jan. 28, 2013.

Order Denying Reconsideration Feb. 21, 2013.

Lothian Cassidy, LLC, pro se.

Ira Lawrence Herman, Gabrielle Elise Farina, Thompson & Knight, LLP, New York, NY, Robert L. Paddock, Thompson & Knight, L.L.P., Houston, TX, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Lothian Cassidy, LLC and Israel Grossman ("Grossman," and collectively, "Plain-

tiffs") filed an Amended Verified Complaint (the "Amended Verified Complaint") in New York State Supreme Court, New York County (the "State Court"), Index No. 600586/2009, against Lothian Exploration & Development II, L.P. ("LEAD II"), Lothian Energy PLC, Michael Raleigh, Paul B. Loyd, Jr., Belridge Energy Advisors, L.P., Peninsula Catalyst Fund (QP) L.P., JVL Global Energy, L.P., JVL Global Energy (QP) L.P., Navitas Fund, L.P., and Nawab Energy Partners, L.P. ("Nawab," and collectively, "Defendants"). LEAD II and Lothian Energy PLC excluded, the remaining defendants (collectively, the "Belridge Group,") removed the action to this court pursuant to 28 U.S.C. §§ 1334, 1446, and 1452. (Dkt. No. 1.) Plaintiffs moved to remand to the State Court, (Dkt. No. 28) while the Belridge Group has moved for the matter to be transferred to the Western District of Texas (*see* Dkt. Nos. 9 & 31).

Upon consideration of the parties' submissions and arguments, the Court **DENIES** Plaintiffs' motion to remand this action to the State Court, and **GRANTS** the Belridge Group's motion to transfer venue to the Western District of Texas.

## I.  *BACKGROUND*

On June 13, 2007, Lothian Oil Inc. ("LOI") and several related entities—but not LEAD II or Lothian Energy PLC—filed petitions for Chapter 11 bankruptcy protection (the "LOI Bankruptcy") in the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court"). On June 27, 2008, the Bankruptcy Court issued an order confirming the Second Modified Amended Joint Plan of Liquidation for LOI (the "LOI Bankruptcy Plan") and the related entities (the "Confirmation Order").

Both before and after the Confirmation Order, a number of interested parties, including Plaintiffs and Defendants in this action, engaged in what appears from the filings before this Court to be an arduous and complicated squabble for various rights, assets, and monies. This lawsuit is but the latest iteration of that struggle.

Initially, in April 2009, Plaintiffs filed a motion for summary judgment in lieu of a complaint in the State Court, naming only LEAD II as a defendant, and seeking recovery of $500,000 under a promissory note. The motion was denied, and Plaintiffs were ordered to file a formal complaint, which they did in January 2010. The resulting Verified Complaint, again naming only LEAD II as a defendant, made mention of the $500,000 promissory note, but also sought damages under a number of other causes of action, including fraud, conversion, and constructive trust. LEAD II never appeared, and the State Court issued a default judgment against it and referred the matter to a Special Referee on the issue of damages.[1]

In May 2010, the Special Referee determined that Plaintiffs could recover based on the promissory note at issue in the initial motion for summary judgment but dismissed all other causes of action without prejudice, specifically noting that "it is beyond cavil that, at the most, Lothian Energy, PLC; Lothian Oil, Inc.; Lothian Oil Texas I; NAWAB Energy Partners, L.P.; and the Belridge Group Texas minority shareholders group, ought to be parties to this action to the extent amplified in the complaint...." (Dkt. No. 1 Ex. 6, Conclusions of Law ¶ 33.) Notably, both LOI and Lothian Oil Texas I are entities cov-

---

1. The Belridge Group asserts in its Notice of Removal that LEAD II is "a defunct company." (Dkt. No. 1).

ered by the initial petition for bankruptcy protection filed in the Bankruptcy Court.

Meanwhile, in Texas, the Bankruptcy Court issued an order enforcing the injunction contained in the LOI Bankruptcy Plan, thereby preventing Plaintiffs in this action from continuing their claims against LEAD II. The injunction in question prevented "all Persons who have been, are, or may be holders" of claim against LOI from "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtors, their Estates, or the Estate Property." On appeal, the United States District Court for the Western District of Texas overturned the order enforcing the injunction as it applied to Plaintiffs' Verified Complaint, holding that the bankruptcy court erroneously concluded that the suit affected "Estate Property" as the term is defined in the LOI Bankruptcy Plan. (Dkt. No. 30 Ex. 1 at 10–11.)

Subsequently, in January 2012, Plaintiffs filed the Amended Verified Complaint at issue in this action in the State Court asserting the claims dismissed by the Special Master, and adding Lothian Energy PLC and the Belridge Group as defendants. Plaintiffs did not name LOI and Lothian Oil Texas I despite the Special Master's finding that they "ought to be parties." Plaintiffs' Amended Verified Complaint asserts fourteen causes of action: 1) aiding and abetting conversion; 2) breach of contract; 3) breach of implied covenant of good faith and fair dealing; 4) tortious interference with a contract; 5) willful, wanton, and gross negligence; 6) conversion; 7) fraud; 8) false representation or concealment of material facts; 9) detrimental reliance; 10) unjust enrichment; 11) quantum meruit; 12) specific performance; 13) delivery of title to Grossman; and 14) imposition of a constructive trust. (*See* Dkt. No. 1 Ex. 7.)

Plaintiffs' claims are variations on a theme: at base, Plaintiffs allege that the Belridge Group wrongfully absconded with property (specifically, oil wells) that should have been subject to the LOI Bankruptcy by funneling it through LEAD II, which had a partnership with LOI. Plaintiffs' allegations focus on the treatment of the two "Casselman" oil wells—which LEAD II and LOI at one time owned in partnership, and in which Grossman claims a one-half interest—and similar allegations regarding the transfer of the "East Cowden," "Bohannon," "Foster" and "Nobles" properties. In all instances, Plaintiffs allege that Defendants wrongfully transferred assets to the Belridge Group that should have been used instead to satisfy LEAD II and LOI's obligations to Grossman. (*See, e.g.,* Dkt. No. 1 Ex. 7, ¶ 85 ("Defendant is responsible for the consequences of the improper transfer of its assets to the bankrupt non-party Lothian, the anticipated fraudulent conveyance by non-party Lothian of its assets and fraudulent settlement of litigation through bankruptcy that resulted in the failure of defendant to have adequate assets to satisfy the contractual obligation to Plaintiffs.").)

As noted above, the history of the LOI Bankruptcy appears to be long and quite complicated, and the dispute over proper ownership of the oil at issue has claimed many trees. It is not necessary § or desirable) to recount the full history, but the Court notes that the Bankruptcy Court has considered a range of issues that include: 1) rights to oil in the Casselman, Cowden, and Bohannon properties (*see In re Lothian Oil Inc.,* No. 07 BK 70121, Dkt. Nos. 17 & 169 (Bankr.W.D.Tex. July 16, 2007)); 2) transfer of ownership of the Nobles property from LOI to the Belridge Group (*see* Dkt. No. 31 Ex. A–15, A–16, & A–19); and 3) Grossman's claim to the Casselman wells (*see* Dkt. No. 31 Ex. A–22). Further, the Bankruptcy Court had

at least two occasions to consider fraudulent transfer allegations regarding at least some of the properties at issue in this action. (*See* Dkt. No. 31 EX. A–4, A–5, & A–9.)

Additionally, by way of relevant background, it must be noted that a group of plaintiffs—including the two named here—filed a separate action alleging a number of similar causes of action against an overlapping group of defendants in New York State Supreme Court, Kings County. (*See* Dkt. No. 31 Ex. A–26.) Certain defendants removed that action to the United States District Court for the Eastern District of New York. That court determined that the litigation constituted an action arising in and related to the LOI Bankruptcy as defined in 28 U.S.C. § 1334(b), and thus denied plaintiffs' motion for remand and transferred the case to the Western District of Texas. *See Lothian Cassidy LLC v. Ransom*, 428 B.R. 555 (E.D.N.Y.2010). The Bankruptcy Court subsequently dismissed those claims. (*See* Dkt. No. 31 Ex. A–9.)

## II. *DISCUSSION*

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." *Stahl v. Stahl*, No. 03 CV 0405, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003).

## A. *MOTION TO REMAND*

### 1. *Legal Standard*

Under Section 1452(a) of Title 28, "[a] party may remove any claim or cause of

action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). "When challenged, the party seeking removal bears the burden of establishing that the federal district court has jurisdiction." *Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 CV 1927, 2012 WL 967582, at *2 (S.D.N.Y. Mar. 13, 2012). "Additionally, 'out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability.'" *Id.* (*quoting In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir.2007))).

### 2. *Jurisdiction Under 28 U.S.C. § 1334(b)*

Section 1334(b) of Title 28 grants district courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "As a result, the three types of jurisdiction that district (and hence bankruptcy) courts may exercise under § 1334 are colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction." *In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 269 (Bankr.S.D.N.Y.2004). Thus, the first question the Court must consider is which, if any, of these types of jurisdiction exist in this action.[2]

"Arising under" proceedings consist of causes of action created by Title 11 of the Bankruptcy Code, meaning "'any matter

---

**2.** Plaintiffs' threshold argument that the Belridge Group's removal was improper because it was not unanimous is a nonstarter: unanimity is not required for removal under 28 U.S.C. § 1452(a). *See California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 68, 103 (2d Cir.2004) ("[B]ecause any one 'party' can remove under Section 1452(a), removal under that provision, unlike removal under Section 1441(a), does not require the unanimous consent of the defendants.").

under which a claim is made under a provision of [T]itle 11.'" *In re Salander-O'Reilly Galleries, LLC,* 475 B.R. 9, 27 (S.D.N.Y. 2012) (*quoting Binder & Binder, P.C. v. Finnie,* No. 05–3652, 2007 WL 1574294, at *10 (Bankr.S.D.N.Y. May 29, 2007)). Claims "arise in" bankruptcy when, although not based on any right expressly created by Title 11, they " 'would have no practical existence but for the bankruptcy.'" *In re Casual Male Corp.,* 317 B.R. 472, 476 (Bankr.S.D.N.Y.2004) (*quoting Bergstrom v. Dalkon Shield Claimants Trust,* 86 F.3d 364, 372 (4th Cir.1996)). "Arising under" and "arising in" claims are both considered to be "core" bankruptcy proceedings, while "related to" claims are considered to be "non-core" proceedings. *Shiboleth v. Yerushalmi,* 412 B.R. 113, 116 (S.D.N.Y.2009). "Related to" jurisdiction is established where a claim has a "conceivable effect" on the bankruptcy estate. *In re Casual Male Corp.,* 317 B.R. at 476. Where, as here, the bankruptcy plan in question has already been confirmed, the Bankruptcy Court's jurisdiction shrinks to cover only matters that have a "close nexus" to the bankruptcy plan and the plan provides for jurisdiction over the dispute. *In re DPH Holdings Corp.,* 437 B.R. 88, 97 (S.D.N.Y.2010).

"Arising under" jurisdiction plainly does not exist in this case: none of plaintiffs' causes of action are asserted under a provision of Title 11 of the Bankruptcy Code. But the fact that Plaintiffs' claims are rooted in common law and name only non-debtors as defendants does not preclude the latter two types of jurisdiction. Common-law claims closely connected with the administration of the bankruptcy can qualify as "arising in" a bankruptcy even though they may, in a literal sense, be brought outside a bankruptcy action. *See Winstar Holdings, LLC v. Blackstone Grp. L.P.,* No. 07 CV 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) § noting that

"arising in" jurisdiction is "less clearly defined" than "arising under" jurisdiction). "Arising in" claims may include "[m]atters involving the enforcement or construction of a bankruptcy court order ..." *In re Sterling Optical Corp.,* 302 B.R. 792, 801 (Bankr.S.D.N.Y.2003). However, not all "garden-variety common-law claims" qualify. *See Winstar Holdings,* 2007 WL 4323003, at *3–4.

In holding that a non-debtor contract dispute constituted an "arising in" action, the Second Circuit outlined the following factors: 1) the dispute was based on the rights established in a sale order issued by the bankruptcy court; 2) the dispute involved interpretation of the bankruptcy court's orders; and, 3) the dispute was already before the bankruptcy court as part of one of the party's claims against the estate. *See In re Petrie Retail, Inc.,* 304 F.3d 223, 229–231 (2d Cir.2002); *see also In re Iridium Operating LLC,* 285 B.R. 822, 830 (S.D.N.Y.2002) ("A contract action, and similarly a non-personal injury tort action, may be a core proceeding depending on '(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.'" (*quoting In re U.S. Lines, Inc.,* 197 F.3d 631, 637 (2d Cir.1999))). Subsequent decisions have held that certain actions between non-debtors are core proceedings based on the principle highlighted in *Petrie* that a bankruptcy court retains jurisdiction to interpret and enforce its own orders. *See In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 97–98 (2d Cir.2005); *Winstar Holdings,* 2007 WL 4323003, at *3–5; *Lothian Cassidy,* 428 B.R. at 560.

■ The facts in this action support "arising in" jurisdiction under *Petrie.* Most specifically, the Bankruptcy Court's March 6, 2008 Order approving the sale of

the Nobles claim to defendant Nawab satisfies the first two *Petrie* factors. First, the resolution of this dispute depends, at least in part, on rights created by that order because Plaintiffs' claim for a constructive trust based on the "fraudulent convey[ance]" of the Nobles claim impacts Nawab's ownership. Second, relief depends on the interpretation of the terms of the March 6, 2008 sale order, including the representations and warranties made by LOI to Nawab. (*See* Dkt. No. 31 Ex. A-19.) These considerations are more than sufficient to establish "arising in" jurisdiction. *See In re Grumman Olson Indus., Inc.*, 445 B.R. 243, 248 (Bankr.S.D.N.Y. 2011) (finding subject matter jurisdiction where the first two *Petrie* factors were present); *see also In re Gen. Growth Props., Inc.*, 460 B.R. 592, 598 (Bankr. S.D.N.Y.2011) ("A bankruptcy court always has jurisdiction to interpret its own orders. It does not matter that the State Court Action is purportedly between two non-debtors....") (internal citations omitted).[3]

More generally, the Court recognizes other significant connections to the LOI Bankruptcy. As noted above, the Bankruptcy Court has already issued a number of other rulings covering much of the subject matter at issue in this action, including LOI's rights to the Casselman, Bohannon, and Cowden properties. *See, e.g., In re Lothian Oil Inc.*, No. 07 BK 70121, Dkt. No. 17 & 169 (Bankr.W.D.Tex. July 16, 2007). Further, several of Plaintiffs' claims asserted in the Amended Verified Complaint allege structural deficiencies with the LOI Bankruptcy itself. (*See, e.g.,* Dkt. No. 1 Ex. 7, ¶ 63 (Defendants executed a scheme allowing "assets to be misappropriated by the bankrupt non-party Lothian to then be fraudulently conveyed to its minority Texas shareholders.").)[4] The Court is also mindful of the Special Referee's repeated findings that certain of Plaintiffs' claims even require LOI to be named as a defendant. (*See, e.g.,* Dkt. No. 1 Ex. 6, Conclusions of Law ¶ 21 ("It is clear that the relief sought by [Lothian Cassidy] as to the Cassidy Project impacts upon the interest also held by Lothian Oil, Inc., but it is not a defendant in this action."); *id.* at ¶ 29 (noting that the record is "ambiguous as to whether Lead II has a complete, absolute, total, unencumbered interest in the two Casselman wells," and that "[i]t

**3.** As Plaintiffs note, the Second Circuit did not find core jurisdiction in *Mt. McKinley Insurance Co. v. Corning Inc.*, an action that involved a contract that pre-dated the bankruptcy at issue. *See* 399 F.3d 436, 449 (2d Cir.2005) (noting that Petrie "addressed a specific factual situation" and was not relevant because none of the listed factors were present). But, unlike here, the court in that case specifically found that "none of the factors *Petrie* emphasized" were present. *Id.* Further, although the claims in this action are not identical to those in *Lothian Cassidy, see* 428 B.R. at 560 (highlighting plaintiffs' "tort claims concerning alleged professional malpractice in the actual administration in bankruptcy court" as basis for jurisdiction), the court in that case expressed the principle that "matters involving the enforcement or construction of a bankruptcy court order fall under 'arise in' jurisdiction" as an independent basis for federal jurisdiction, *id.* That test is met here.

**4.** *See also e.g., id.* at ¶ 77 ("Defendant was unjustly enriched by the services and monies it solicited from Plaintiffs, the results of its conspiring and orchestrating a bankruptcy of non-party Lothian and the fraudulent conveyances to THE BELRIDGE GROUP of minority Texas shareholders of non-party Lothian."); *id.* ¶ 85 ("Defendant is responsible for the consequences of the improper transfer of its assets to the bankrupt non-party Lothian, the anticipated fraudulent conveyance by non-party Lothian of its assets and fraudulent settlement of litigation through bankruptcy that resulted in the failure of defendant to have adequate assets to satisfy the contractual obligation to Plaintiffs.").

appears that imposing a constructive trust on the two Casselman wells without joining, at the most, Lothian Oil, Inc., and Lothian Energy, PLC, would be improper").)

This Court heeds the Second Circuit's oft-repeated maxim that " 'core proceedings' should be given a broad interpretation," *In re U.S. Lines, Inc.*, 197 F.3d 631, 636–37 (2d Cir.1999), and finds that—particularly given the lengthy history of the Lothian Bankruptcy—the Bankruptcy Court in this case "has a vital interest in policing the integrity of the bankruptcy process in general." *Lothian Cassidy*, 428 B.R. at 560 (*quoting Winstar Holdings*, 2007 WL 4323003, at *5).[5] Because this is a "core" proceeding, the diminished scope of the Bankruptcy Court's post-confirmation jurisdiction does not change the Court's calculus.[6] *See In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y.2009) (holding that, where the court had core jurisdiction to interpret a sales order, "[i]t does not matter ... that the Debtors' chapter 11 plan has been confirmed"); *see also Petrie*, 304 F.3d at 230 ("A bankruptcy court retains post-con-

firmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.").

### 3. *Abstention Under 28 U.S.C. § 1334(c)(1)*

■ Having determined that federal jurisdiction exists, the Court now turns to the question of whether abstention is appropriate under 28 U.S.C. § 1334(c)(1), and finds that it is not.

Section 1334(c)(1) states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[7] Courts "have a 'virtually unflagging obligation ... to exercise the jurisdiction given them,' and may abstain only for a few 'extraordinary and narrow exception[s].' " *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (internal citation omitted) (*quoting Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 813, 96

---

**5.** Plaintiffs' argument that the Western District of Texas' ruling that the Bankruptcy Court erroneously enjoined this litigation "constitutes res judicata of the issue of federal jurisdiction" is off point. (*See* Dkt. No. 29 at 9–10.) The question of the Bankruptcy Court's ability to issue an injunction stands apart from the question of whether this action is subject to federal jurisdiction. In addition, Plaintiffs' attempts to cast this action as simply involving the payment of damages from an earlier ruling (*see, e.g.,* Dkt. No. 32 at 5) are belied by the broad nature of the causes of action asserted in the Amended Verified Complaint.

**6.** In this case, the Bankruptcy Court's March 6, 2008 sale order specifically retains jurisdiction to, among other things, "interpret and enforce the terms and provisions" of the order. (Dkt. No. 31 Ex. A–19 at 3.) Moreover, the Bankruptcy Court's Confirmation Order

retains exclusive jurisdiction to, among other things, "determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or construction of this Plan or any entity's obligations in connection with the Plan." (Dkt. No. 31 Ex. A1 at 21.)

**7.** The Court's finding that this action is a "core" proceeding renders the so-called "mandatory" abstention provision of 28 U.S.C. § 1334(c)(2) inapposite because it does not apply to cases "arising in" bankruptcy jurisdiction. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y.2003) (outlining requirements for application of 28 U.S.C. § 1334(c)(2)—including that the action not be "arising in" a bankruptcy case—and noting that "[a] party is not entitled to mandatory abstention if it fails to prove any *one* of the statutory requirements").

S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Courts weigh the considerations of comity and federalism, judicial economy, and efficiency, and commonly look to one or more of the following twelve factors: "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *Allstate Ins. Co.*, 2012 WL 967582, at *6.

While several of these factors—particularly 2, 5, and 12—point in favor of abstention in this case, these considerations do not outweigh the presumption against abstention, particularly where, as noted above, the Bankruptcy Court has issued multiple rulings that touch upon Plaintiffs' current allegations.[8] As such, the overriding principles of judicial economy and efficiency will be best served if this Court

exercises federal jurisdiction here. *See Winstar Holdings*, 2007 WL 4323003, at *5 ("There is little basis to invoke comity to the state courts here, and every reason to invoke the federal jurisdiction. Although plaintiffs' claims are based on state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of New York law."); *see also Lothian Cassidy*, 428 B.R. at 560 (holding that there is "every reason practically and substantively to handle this case as part of the [Lothian] bankruptcy," and that "comity will not be offended by declining abstention").[9]

## B. *MOTION TO TRANSFER*

### 1. *Legal Standard*

Transfer of venue for "core" proceedings is governed by 28 U.S.C. § 1412, which provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *See also McHale v. Citibank, N.A.*, No. 09 CV 6064, 2009 WL 2599749, at *5 (S.D.N.Y. Aug. 24, 2009). In determining whether to grant transfer under 28 U.S.C. § 1412, courts consider the same factors as they do under the 28 U.S.C. § 1404(a) transfer provision. *Id.* Under section 1404(a), courts consider the following non-exclusive factors in deciding whether a transfer is warranted: (1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of opera-

---

8. The Court further notes that the Bankruptcy Court has recently remarked on its busy docket. *See In re Rosales*, No. 12–30590–RBK, 2012 WL 4343701, at *6 (Bankr.W.D.Tex. Sept. 21, 2012), but declines to find that this factor definitively supports abstention given

the Bankruptcy Court's familiarity with these issues and parties.

9. Moreover, a number of the factors—particularly 3, 4, and 6—point against abstention.

tive facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests of justice. *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 285–86 (S.D.N.Y.2004).

"The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *CAVU Releasing, LLC v. Fries*, 419 F.Supp.2d 388, 394 (S.D.N.Y. 2005) (citation and internal quotation marks omitted). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

### 2. *Application*

■ The Court is persuaded that the circumstances of this case overcome the hurdles to transfer because the relationship between Plaintiffs' causes of action and the prior orders issued by the Bankruptcy Court as part of the LOI Bankruptcy establish that the interests of justice are best served by granting transfer.

The Court grants, as it must, great weight to Plaintiffs' choice of forum, *see NBA Props., Inc. v. Salvino, Inc.*, No. 99 Civ. 11799, 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000), and considers the fact that transfer will almost certainly shift the inconvenience from Defendants to Plaintiffs, *see id.* at *7.[10] Less deference to Plaintiffs' choice of court may be accorded, however, where the plaintiff is not a resident of the forum district, and there may be indications that forum shopping may have been a consideration for the plaintiff's choice. *See Zepherin v. Greyhound Lines Inc.*, 415 F.Supp.2d 409, 411 (S.D.N.Y. 2006) ("While a plaintiff's choice of forum should be accorded some deference, that consideration is not entitled to the same weight where a plaintiff is not a resident of the forum district or the operative facts are centered in another district.") The Court notes that Lothian Cassidy, LLC is a Delaware partnership, and Grossman is a resident of the Eastern District of New York, where they previously litigated issues related to this case.

In this case, judicial economy and the interests of justice tilt the scales toward the Western District of Texas. *See Winstar Holdings*, 2007 WL 4323003, at *7 ("There is no plausible rationale for removing the case to federal court in order to decide it in a forum remote from the court where that proceeding is pending.")[11] As the court in *Lothian Cassidy* recognized, transfer "will ensure supervision by the court most familiar with, and with continu-

---

**10.** Plaintiffs' files and witnesses are in New York (*see* Dkt. No. 29 at 14), while the Belridge Group's files and witnesses are in Texas (*see* Dkt. No. 31 at 24).

**11.** Plaintiffs argue that Lothian Energy PLC's selection of New York state courts as a forum in a "subscription agreement" dictates the opposite result. (*See* Dkt. No. 29 at 15 n. 3.) It does not. The agreement relates to an offering of 75,000 shares of the company, and the forum selection clause in question is spe-

cifically limited to *actions related to that agreement*. (*See* Dkt. No. 29 Ex. 20 at 8.) Plaintiffs—who were not parties to that agreement—fail to otherwise link it to this action. Further, the Court points without further comment to footnote 4 of *Lothian Cassidy*. *See* 428 B.R. at 561 § finding unavailing plaintiffs' argument that a forum selection clause in a "document of dubious relevance" prevents transfer.

ing administrative responsibility for, [Lothian's] bankruptcy proceeding." 428 B.R. at 562. That statement is equally true in this action. *See also Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, No. 11 CV 7511, 2012 WL 698134, at *4 (March 5, 2012) (noting that, while presumption of retaining venue with the bankruptcy court is weakened after the plan has been confirmed, "[w]here a bankruptcy proceeding involves a 'substantial learning curve' transfer pursuant to 28 U.S.C. § 1412 is appropriate" (*quoting In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990))).

## III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion of plaintiffs Lothian Cassidy, LLC and Israel Grossman to remand this action to the New York Supreme Court, New York County is **DENIED,** and it is further

**ORDERED** that the motion of defendants Belridge Energy Advisors, L.P., Peninsula Catalyst Fund (QP) L.P., JVL Global Energy, L.P., JVL Global Energy (QP) L.P., Navitas Fund, L.P., and Nawab Energy Partners, L.P. to transfer this action to the United States District Court for Western District of Texas is **GRANTED.**

**SO ORDERED.**

### *DECISION AND ORDER*

By Decision and Order dated January 28, 2013 (the "Order") the Court denied the motion of plaintiffs Lothian Cassidy, LLC and Israel Grossman's (collectively, the "Plaintiffs") to remand this action to state court and granted the motion of certain defendants[1] to transfer the matter to the United States District Court for the Western District of Texas. By motion dated February 11, 2013, Plaintiffs seek reconsideration of the Court's Order.

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (citations and quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (*quoting* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790).

To these ends, a request for reconsideration under Rule 6.3 of this Court's Local Civil Rules ("Rule 6.3"), which governs motions for reconsideration, must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Rule 6.3 is intended to "'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.'" *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (*quoting Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A

---

1. Moving defendants were Michael Raleigh, Paul B. Loyd, Jr., Belridge Energy Advisors, L.P., Peninsula Catalyst Fund (QP) L.P., JVL Global Energy, L.P., JVL Global Energy (QP) L.P., Navitas Fund, L.P., and Nawab Energy Partners, L.P. Two defendants, Lothian Exploration & Development II, L.P. and Lothian Energy PLC, did not join in the motion.

court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues, and to prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment. *See Montanile v. National Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002); *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999).

Plaintiffs raise four grounds for reconsideration: (1) the Court relied on case law that has been superseded or distinguished by the Supreme Court's decision of *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); (2) either mandatory or permissive abstention is warranted; (3) the Court relied on inapposite case law in rendering its decision; and (4) certain defendants have already successfully argued that properties at issue here were not part of the bankruptcy estate of Lothian Oil, Inc., and are thus judicially stopped from claiming that these assets in fact belong to Lothian Oil, Inc. None of these arguments warrants reconsideration of the Court's Order.

To begin, *Stern* addresses a separate issue that does not control this case: whether bankruptcy courts have the authority to enter final judgments over counterclaims, instead of submitting proposed findings of fact and conclusions of law to the district court. *See generally Stern,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475. *Stern* does not address the question of federal jurisdiction that was before the Court in this litigation.[2] To this extent, Plaintiffs' arguments do not present any issues not already considered by the Court in issuing the Order.

Further, Plaintiffs' abstention arguments are meritless. As the Court explained in its Order, mandatory abstention is not warranted because the case "arises in" a bankruptcy case. Likewise, as the law requires, the Court's Order cited to, and considered "one or more—though not necessarily all" of the twelve permissive abstention factors listed by Plaintiffs. *Allstate Ins. Co. v. CitiMortgage, Inc.,* No. 11 Civ. 1927, 2012 WL 967582, at *6 (S.D.N.Y. Mar. 13, 2012). In this respect as well, Plaintiffs' advance no new controlling law or facts the Court failed to consider that might reasonably alter the result.

Plaintiffs' argument that the Court inappropriately relied on the Second Circuit's decision in *In re Petrie Retail, Inc.,* 304 F.3d 223 (2d Cir.2002), also fails. In fact, the Court's Order expressly distinguished *Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436 (2d Cir.2005), the only other controlling authority cited by Plaintiffs.

Plaintiffs' final argument that certain defendants should be judicially estopped from arguing that Lothian Oil, Inc., owns properties at issue in this case simply repeats a claim contained, albeit briefly, in their earlier briefs, (*See* Dkt. No. 29, p. 6; Dkt. No. 32, p. 8), and does not advance new controlling law or facts the Court failed to consider that might reasonably alter the result. Moreover, the Order makes it clear that the question of federal jurisdiction considered by the Court in this case does not turn on whether or not Lothian Oil, Inc., actually owns some or all of the disputed property.

---

**2.** In addition, as Plaintiffs' case law notes, the exact impact of *Stern* is still undetermined in this jurisdiction. *See Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l, Ltd.,* No. 12 Civ. 5859, —— F.Supp.2d ——, ——, 2012 WL 5464619, at *2 (S.D.N.Y. Feb. 1, 2012)

("Following the Supreme Court's holding in Stern, courts in this district have taken different approaches in adapting the [*In re*] *Orion* [*Pictures Corp.,* 4 F.3d 1095 (2nd Cir.1993)] factors to *Stern's* holding.")

Accordingly, it is hereby

**ORDERED** that the motion for reconsideration (Docket No. 41) submitted by plaintiffs Lothian Cassidy, LLC, and Israel Grossman is **DENIED.**

**SO ORDERED.**