BANK OF AMERICA, N.A., Plaintiff,

v.

WILMINGTON TRUST FSB, Commonwealth Land Title Insurance Co., Fidelity National Title Insurance Co., and First American Title Insurance Co., Defendants.

No. 12 Civ. 8730(VM).

United States District Court, S.D. New York.

May 3, 2013.

Andrea Yassemedis, John Stanley Vishneski, III, Reed Smith LLP, Chicago, IL, Jill Nicole Averett, Reed Smith, LLP, New York, NY, for Plaintiff.

Mark Joseph Hyland, Jeffrey Malcolm Dine, Mandy DeRoche, Seward & Kissel LLP, David Kent Fiveson, Claudia Grossman Jaffe, Butler, Fitzgerald & Potter, A Professional Corporation, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Bank of America, N.A., ("Bank of America") filed a complaint (the "Complaint") against defendants Wilmington Trust FSB ("Wilmington Trust"), Commonwealth Land Title Insurance Co. ("Commonwealth"), Fidelity–National Title Insurance Co. ("Fidelity"), and First American Title Insurance Co. ("First American," with Commonwealth and First American, the "Title Insurers," and collectively, "Defendants"). Bank of America seeks a declaratory judgment resolving its duties to provide certain information to Defendants in connection with multiple lawsuits brought in the wake of the failed Fontainebleau Las Vegas project (the "Fontainebleau Project"). On January 31, 2013, Defendants moved to dismiss, arguing in their supporting memorandum of law that venue was improper pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). On February 14, 2013, Bank of America submitted a response in opposition to dismissal, and on February 21, 2013, Defendants submitted their reply in support. For the reasons discussed below, Defendants' motion is DENIED and the case is transferred to the United States District Court for the Southern District of Florida.

## I. *BACKGROUND* [1]

This dispute arises out the failed Fontainebleau Project to develop a resort located on the north end of the Las Vegas Strip. Bank of America acted as Administrative Agent under a June 6, 2007 Credit Agreement and as Disbursement Agent under a June 6, 2007 Master Disbursement Agreement. Further, Bank of America, in its capacity as Administrative Agent, was the insured party named on a title insurance policy (the "Title Policy") issued by the Title Insurers, which was written to protect the priority of the mortgage funding the Fontainebleau Project.

The Fontainebleau Project was financed in part by a credit agreement under which the borrower obtained funds by first submitting notices of borrowing, which required lenders to transfer funds into a designated bank account, and then submitting requests to the Disbursement Agent to obtain access to the funds in the account. Bank of America disbursed funds for the Fontainebleau Project through March 2009, after which the borrower stopped requesting funds and filed for bankruptcy.

Bank of America resigned as Administrative Agent and Disbursement Agent for the Fontainebleau Project in May 2009, and Wilmington Trust was appointed as the Successor Administrative Agent and Successor Disbursement Agent under a Successor Administrative Agent Agreement and a Successor Disbursement Agent Agreement, both dated December 1, 2009. The Successor Administrative Agent Agreement and Successor Disbursement Agent Agreement outline Bank of America's contractual obligations to Wilmington Trust, which include facilitating the transfer of information to Wilmington Trust. In addition, Wilmington Trust is also now the insured party named on the Title Policy.

The failure of the Fontainebleau Project triggered four separate litigations involving hundreds of millions of dollars in mechanics liens (the "Mechanics Lien Litigation"), all of which are proceeding in the United States Bankruptcy Court for the Southern District of Florida. Both the Title Insurers and Wilmington Trust have become enmeshed in these cases pursuant to the terms of the Title Policy. The Title Insurers are obligated to defend against covered third-party claims and have appointed counsel to defend Wilmington Trust and lenders, and Wilmington Trust, in its role as insured party, is obligated to cooperate with the Title Insurers in the investigation of the claims. As part of this defense, both the Title Insurers and Wilmington Trust have requested information from Bank of America regarding the administration of Fontainebleau Project funds. These requests are the subject of the Complaint.

Specifically, Bank of America objects to the broad scope and burdensome nature of the requests for information, and to the Title Insurers' "conflict of interest" based on the fact that they have adopted the position that the Mechanics Lien Litigation would not be a covered claim under the Title Policy if the funds were administered incorrectly. Due to this alleged conflict, the information requested of Bank of America would relate both to the defense of the Mechanics Lien Litigation *and* to

---

1. The facts below are taken from the Complaint—cited hereinafter, where necessary, as "Compl."—and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. *See Spool v.* *World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008) (*citing GICC Capital Corp. v. Technology Fin. Grp., Inc.,* 67 F.3d 463, 465 (2d Cir.1995)). Except where specifically referenced, no further citation to the Complaint will be made.

the Title Insurers' defense of coverage of that litigation. As a result, Bank of America seeks a declaratory judgment that would 1) clarify Bank of America's obligation to provide information to the Title Insurers and Wilmington Trust under the Successor Administrative Agent Agreement and the Successor Disbursement Agent Agreement, 2) clarify that Bank of America has no obligation under the Title Policy to provide information to the Title Insurers (and that the Title Insurers are responsible for costs if Bank of America does provide them with information), and 3) clarify the scope of Wilmington Trust's obligation to provide information to the Title Insurers in light of the Title Insurers' apparent conflict of interest.

Defendants moved to dismiss for improper venue under Rule 12(b)(3), arguing that the court handling the bankruptcy of the borrowers in the Fontainebleau Project (the "Bankruptcy Court") has exclusive jurisdiction over the first and third counts in the complaint, and that venue is otherwise improper under 28 U.S.C. § 1391 ("Section 1391"). (*See* Dkt. No. 18.) Wilmington Trust is a financial holding company organized under Delaware law with its main offices in Wilmington, Delaware. Fidelity is organized under California law with its main offices in Jacksonville, Florida. Commonwealth is organized under Nebraska law with its main offices in Jacksonville, Florida. First American is organized under Delaware law with its main offices in Santa Ana, California.

## II. *LEGAL STANDARD*

### A. *VENUE UNDER SECTION 1391*

■ On a motion to dismiss for improper venue under Rule 12(b)(3), "Once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper." *French Transit, Ltd. v. Modern Coupon Sys., Inc.,* 858 F.Supp. 22, 25 (S.D.N.Y.1994); *see also Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir.2005) ("If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue].") (*quoting CutCo Indus. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir. 1986)).

Section 1391 provides that civil actions may be properly brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The statute further defines "residency" for venue purposes, in relevant part, as being satisfied where the defendant entity "is subject to the court's personal jurisdiction with respect to the civil action in question ..." 28 U.S.C. § 1391(c)(2).[2]

Personal jurisdiction in New York is established either under CPLR § 301, which allows for "general" jurisdiction predicated on a continuous or systematic

---

**2.** This language was amended by the Jurisdiction and Venue Clarification Act of 2011: the older provision it replaced allowed for proper venue where the defendant was subject to personal jurisdiction when the action was commenced. *See* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3805 (3d ed.).

course of doing business, *see JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F.Supp.2d 587, 592 (S.D.N.Y.2011), or CPLR § 302, which allows for specific jurisdiction over non-domiciliaries where, in relevant part, the entity "transacts any business within the state or contracts anywhere to supply goods or services in the state," and the "cause of action aris[es] from" those actions, *see* CPLR § 302(a). *See also Erickson Prods., Inc. v. Atherton Trust*, No. 12 Civ. 1693, 2013 WL 1163346, at *3 (S.D.N.Y. Mar. 20, 2013) (finding that in order to establish jurisdiction under CPLR § 302(a) "a plaintiff must show that '(1) defendant purposefully availed himself of the privilege of doing business in the forum state such that the defendant could foresee being brought into court there; and (2) plaintiff's claim arises out of or is related to the defendant's contacts with the forum state.'" (*quoting Aqua Prods., Inc. v. Smartpool, Inc.*, No. 04 Civ. 5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005))).

### B. *JURISDICTION OF BANKRUPTCY COURTS*

The jurisdiction of bankruptcy courts is governed by 28 U.S.C. § 157, which limits their reach to proceedings "arising under title 11 or arising in or related to a case under title 11 …" "Arising under" proceedings consist of causes of action created by Title 11 of the Bankruptcy Code, meaning "'any matter under which a claim is made under a provision of [T]itle 11.'" *In re Salander–O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y.2012) (*quoting Binder & Binder, P.C. v. Finnie*, No. 05 Civ. 3652, 2007 WL 1574294, at *10 (Bankr.S.D.N.Y. May 29, 2007)). Claims "arise in" bankruptcy when, although not based on any right expressly created by Title 11, they "'would have no practical existence but for the bankruptcy.'" *In re Casual Male Corp.*, 317 B.R. 472, 476

(Bankr.S.D.N.Y.2004) (*quoting Bergstrom v. Dalkon Shield Claimants Trust*, 86 F.3d 364, 372 (4th Cir.1996)). "Arising under" and "arising in" claims are both considered to be "core" bankruptcy proceedings, while "related to" claims are considered to be "non-core" proceedings. *Shiboleth v. Yerushalmi*, 412 B.R. 113, 116 (S.D.N.Y. 2009). "Related to" jurisdiction is established where a claim has a "conceivable effect" on the bankruptcy estate. *In re Casual Male Corp.*, 317 B.R. at 476.

## III. *DISCUSSION*

Bank of America asserts in the Complaint that venue is proper in this district because the Title Insurers are subject to personal jurisdiction in New York, and because "[Bank of America] and Wilmington Trust, as parties to the Successor Administrative Agent Agreement and Successor Disbursement Agent Agreement, selected this court as an appropriate venue for all disputes relating to those Agreements." (Compl. at ¶ 10.) The Court focuses its attention on the topic of venue as it relates to Wilmington Trust, as the parties' most vigorous disputes stem from this topic. Defendants argue that neither the terms of the Successor Administrative Agent Agreement and Successor Disbursement Agent Agreement, nor the plain language of Section 1391 supports a finding that venue is proper in this action.

### A. *VENUE IS PROPER UNDER SECTION 1391*

Defendants argue that Bank of America has not established venue under Section 1391 because 1) the Complaint states that Wilmington Trust is organized under the law of Delaware and has its main offices in Wilmington, Delaware, and thus not all defendants reside in New York as required by Section 1391(b)(1), and 2) because the events or omissions giving rise

to the claims did not occur in this jurisdiction as required by Section 1391(b)(2), The Court need only focus on Section 1391(b)(1), as Bank of America does not contend that Section 1391(b)(2) is satisfied. In its opposition, Bank of America points out that Section 1391(b)(1) is satisfied because Defendants do not dispute that the Title Insurers are subject to personal jurisdiction in New York and because Wilmington Trust listed a New York office as a proper place of service in the Successor Distribution Agent Agreement and that it continues to maintain this office. Defendants respond that this does not establish "residency" for Wilmington Trust under the venue statute because personal jurisdiction must be established "with respect to the civil action in question."

Despite Defendants' protestations regarding the plain language of the statute, case law interpreting this particular recent addition to the venue statute (although lacking in this district), indicates that "residency" can be established through either general or specific personal jurisdiction. *See, e.g., Vision Wine & Spirits, LLC v. Winery Exchange, Inc.*, No. 12 Civ. 6677, 2013 WL 1737015, at *2 (D.N.J. Apr. 22, 2013) (finding the statute satisfied where personal jurisdiction can be established either through specific or general jurisdiction); *Costa v. Wirtgen Int'l GmbH & Co. KG*, No. 12 Civ. 05669, 2013 WL 1636043, at *2 (N.D.Cal. Apr. 16, 2013) ("To be subject to personal jurisdiction in any venue, the corporate defendant must either have 'continuous and systematic' contacts sufficient to establish general personal jurisdiction, or more limited contacts sufficient to establish specific personal jurisdiction.").

Although the causes of action in this case may not be sufficiently linked to Wilmington Trust's New York office to establish jurisdiction under New York's long-arm statute, *see McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y.1981) ("Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd. (a), par. 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon.") (internal citation omitted), Bank of America has nevertheless made a prima facie showing that Wilmington Trust is subject to personal jurisdiction under New York law. *See Gulf Ins. Co.*, 417 F.3d at 355 (where court relies on pleadings and affidavits, plaintiff need only make a prima facie showing of venue); *see also GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 406 (S.D.N.Y.2001) (finding personal jurisdiction under New York's general provision of CPLR § 301 where defendant maintained an office and place of business in New York). Therefore, the Court finds that, because all defendants are subject to personal jurisdiction in New York, Section 1391(b)(1) is satisfied.

**B. THE ROLE OF THE SUCCESSOR ADMINISTRATIVE AGENT AGREEMENT, THE SUCCESSOR DISBURSEMENT AGENT AGREEMENT, AND THE PENDING BANKRUPTCY**

Despite the fact that Section 1391 is satisfied, the Court's venue inquiry must consider the impact of the various jurisdictional clauses cited by the parties, as well as the potential impact of this suit on the underlying pending bankruptcy. Both the Successor Administrative Agent Agreement and Successor Disbursement Agent Agreement contain a substantially similar clause governing jurisdiction, each of which states in relevant part;

> Subject to the terms of the Appointment Order, or as otherwise directed by the United States Bankruptcy Court of the Southern District of Florida in connec-

tion with the bankruptcy case of [Fontainebleau Las Vegas, LLC], [the party] submits for itself and its property in any legal action relating to this Agreement or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the courts of the State of New York, the Courts of the United States for the Southern District of New York, and appellate courts from any thereof in the manner, and to the extent, contemplated by the ... Agreement.

(Compl. Ex. C at ¶ 12(a); Compl. Ex. D at ¶ 11(a).) Defendants argue that the choice of venue of New York courts is effectively rendered inoperable by the Appointment Order, which states in relevant part:

Until the bankruptcy cases of the Debtors are closed or as otherwise directed by this Court, this Court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of this Order, each of the Agreements, all amendments or modifications thereto, any waivers, releases and consents thereunder, and of each of the instruments executed in connection therewith, (b) resolve any disputes arising under or related to any of the Agreements, and (c) interpret, implement and enforce the provisions of this Order.

(Dkt. No. 19 Ex. H at ¶ 12.) Because the bankruptcy remains open, Defendants argue, the Bankruptcy Court has exclusive jurisdiction over counts one and three in the Complaint because those counts relate to the Successor Administrative Agent Agreement and the Successor Disbursement Agent Agreement. Bank of America responds that this suit falls outside the Bankruptcy Court's jurisdiction and that it cannot retain jurisdiction that it never had.

 Bank of America's argument is unavailing. Counts one and three in the Complaint clearly ask the Court to deter-

mine the scope of certain terms of the Successor Administrative Agent Agreement and the Successor Disbursement Agent Agreement. A legal interpretation of the agreements falls squarely within the scope of the Appointment Clause's language dictating that the Bankruptcy Court retains exclusive jurisdiction to resolve "any disputes arising under or related to any of the Agreements" (*Id.*) As the Second Circuit held in *In re Millenium Seacarriers, Inc.*, "Bankruptcy courts retain jurisdiction to enforce and interpret their own orders." 419 F.3d 83, 97 (2d Cir. 2005); *see also In re Gen. Growth Props., Inc.*, 460 B.R. 592, 598 (Bankr.S.D.N.Y. 2011) ("A bankruptcy court always has jurisdiction to interpret its own orders. It does not matter that the [action] is purportedly between two non-debtors ....") (internal citations omitted).

Ignoring the plain language of the Appointment Order itself, Bank of America appears to argue that the subject matter of this case is nevertheless insufficiently "related to" the pending underlying bankruptcy to allow the Bankruptcy Court to retain jurisdiction. The Court is not convinced that the Bankruptcy Court has somehow overstepped its boundaries. First, the Second Circuit has held that bankruptcy courts have "broad, well-established powers premised upon 28 U.S.C. §§ 1334 and 157 to preserve the integrity of the reorganization process. Section 105 of the Bankruptcy Code states that where it has jurisdiction, the bankruptcy 'court may issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir.1999) (internal citations omitted).

 Second, Bank of America's argument fails on its face: this action is at least "related to" the underlying bankruptcy because its outcome could very well have a

"conceivable effect" on the bankrupt estate. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court.") Defendants' straightforward example of Fontainebleau Las Vegas, LLC's (one of the bankrupt entities) obligation to pay the cost of the production of exactly the information at issue in counts one and three of this action is more than sufficient to meet this test, as the outcome of this case will necessarily impact the expenses that will be incurred. (*See* Compl. Ex. C at ¶ 6(b); Compl., Ex. D. at ¶ 5(b).)[3] Further, count two is also "related to" the underlying bankruptcy because, as Defendants explain in their reply brief, determination of the Title Insurers' right to information from Bank of America under the title policy impacts whether or not the Title Insurers' duty to indemnify the debtor in the pending Mechanic Lien Litigation, should those liens be determined to have priority. The fact that this indemnification (or lack thereof) is not a certainty does not preclude the Court from finding "related to" jurisdiction. *Cf. Federal Ins. Co. v. Sheldon*, 167 B.R. 15, 20 (S.D.N.Y.1994) ("As the Eighth Circuit has held, 'even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test ....'" (*quoting In re Titan Energy Inc.*, 837 F.2d 325, 330 (8th Cir. 1988))); *see also In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 323 (S.D.N.Y. 2003) ("The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding."); *In re Chateaugay Corp.*, 213 B.R. 633, 638 (S.D.N.Y.1997) ("A case has a 'conceivable effect' on the bankruptcy estate 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'") (*quoting Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y.1994) (internal quotations omitted)).[4]

**3.** Bank of America's curious argument in its opposition that it is not bound by the jurisdiction clause in the Successor Disbursement Agent Agreement because that clause pertains only to "Project Entities" (despite the fact that it specifically relies on that agreement and the similar Successor Administrative Agent Agreement to establish venue in its Complaint) does not compel a different result. In fact, neither jurisdiction clause formally binds Bank of America *or* Wilmington Trust— they apply only to "Project Entities" and to the "Borrower," respectively, and these defined terms do not include any of the parties to this action. But such clauses may be binding where a "non-party is so 'closely related' to either the parties to the contract or the contract dispute itself that enforcement of the clause against the nonparty is foreseeable." *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F.Supp.2d 297, 307

(S.D.N.Y.2012) (internal citations omitted). Indeed, application of the jurisdiction clauses in the Successor Administrative Agent Agreement and the Successor Disbursement Agent Agreement—and thus, by extension, the terms of the Appointment Order—seems particularly apropos here, where Bank of America initially cited these very agreements in support of its venue claims. *Cf. Martin v. Creative Mgmt. Grp., Inc.*, 2010 WL 2629580, at *2–3 (S.D.N.Y. June 29, 2010) (dismissing claim for lack of venue where forum selection clause granted exclusive jurisdiction to a different court).

**4.** In addition, although not argued by Defendants, this dispute may very well be a dispute "related to" the Successor Disbursement Agent Agreement and the Successor Administrative Agent Agreement under the jurisdic-

## C. THE COURT TRANSFERS THIS MATTER IN THE INTEREST OF JUSTICE

■ Pausing a moment to take stock, the Court finds itself confronted with the following situation: while venue is proper under Section 1391, the Bankruptcy Court has issued an order retaining exclusive jurisdiction over two of the three counts at issue here, and has at least "related to" jurisdiction over all three counts. Meanwhile, the case has a connection in name only to this jurisdiction. All parties have main offices outside New York, the Fontainebleau Project began (and stopped) in Nevada, and the subsequent bankruptcy is pending in Florida. Given the facts particular to this case, the Court is convinced the best course of action is to transfer it to the United States District Court for the Southern District of Florida with a recommendation that the action be referred to Judge A. Jay Cristol of the Bankruptcy Court handling the underlying bankruptcy.

■ It is settled law in this jurisdiction that a court may transfer a case sua sponte even if the defendant moves only to dismiss. *See Cento v. Pearl Arts & Craft Supply Inc.*, No. 03 Civ. 2424, 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003) ("Courts have an independent institutional concern to see to it that the burdens of litigation that is unrelated to the forum that a party chooses are not imposed unreasonably on jurors and judges who have enough to do in determining cases that are appropriately before them. The power of district courts to transfer cases under Section 1404(a) *sua sponte* therefore is well established."); *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F.Supp. 88, 91 (S.D.N.Y.1987) ("Regardless of whether there is personal jurisdiction over the defendants, the court has power to transfer pursuant to 28 U.S.C. § 1404(a) if venue is proper and pursuant to 28 U.S.C. § 1406(a) if venue is improper.") (internal citations omitted)

■ "The decision to transfer venue is within the discretion of the court based on 'an individualized, case-by-case consideration of convenience and fairness.'" *In re Northwest Airlines Corp.*, 384 B.R. 51, 60 (S.D.N.Y.2008) (*quoting In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990)). Under 28 U.S.C. § 1404(a), courts may consider the following non-exclusive factors in deciding whether a transfer is warranted: (1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests of justice. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 285–86 (S.D.N.Y.2004);[5]

---

tion clause of the Appointment Order because, as Bank of America pleads in the Complaint, its "duty to provide the information requested by the [Title] Insurers exists only to the extent it has a duty to assist Wilmington Trust pursuant to the Successor Administrative Agent Agreement and Successor Disbursement Agreement." (Compl. at ¶ 42.) Therefore, it is plausible that determination of the scope of the Successor Disbursement Agent Agreement and the Successor Administrative Agent Agreement could impact count two as well. As explained above, however, the Court need not rest jurisdiction on this ground.

5. The Court need not label this proceeding as either "core" or "non-core" in order to proceed with its transfer analysis. In determining whether to grant transfer under 28 U.S.C. § 1412, which governs "core" proceedings, courts consider the same factors as they do

*see also Sheet Metal Workers' Nat'l Pension Fund*, 669 F.Supp. at 91 ("Were the court to find venue proper in this district, the determination of whether an action should be transferred pursuant to 28 U.S.C. § 1404(a) depends upon a balancing of many factors. Similarly, even if the court has neither personal jurisdiction over defendants nor venue over the action, the court can transfer the action if such transfer is in the interest of justice.") (internal citation omitted).

As a threshold matter, the Court finds that this case could have been brought in the Southern District of Florida. *See* 28 U.S.C. § 1409(a) ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."); *see also M.D. Sass Re/Enter. Partners v. Cargill Fin. Servs. Corp.*, No. 93 Civ. 7414, 1994 WL 97335, at *2 (S.D.N.Y. Mar. 18, 1994) (transferring case after finding that the case is "at least a 'related' proceeding" and that venue is proper under 28 U.S.C. § 1409(a) in the district where the bankruptcy is pending); *Widewaters Roseland Ctr. Co. v. TJX Companies, Inc.*, 135 B.R. 204, 208 n. 6 (N.D.N.Y.1991) (transferring case to district court where underlying bankruptcy was pending because "suit could have been commenced in that forum" and citing 28 U.S.C. § 1409(a) and 28 U.S.C. § 1412).

Further, judicial economy and the interests of justice are best served by transfer of this case. Most of the *Herbert* factors are neutral at best. Only the fact that Bank of America has chosen this forum argues against transfer, and that choice is clearly outweighed here where the Court has no other connection with the case and the Bankruptcy Court has retained exclusive jurisdiction to two of the counts at

under the 28 U.S.C. § 1404(a) transfer provision. *See McHale v. Citibank, N.A.*, No. 09

issue here and has already gained familiarity with the subject matter. *See Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 562 (E.D.N.Y.2010) (noting that consideration of case's relationship to bankruptcy proceeding was "paramount," that transfer of case "arising in" the bankruptcy "will ensure supervision by the court most familiar with, and with continuing administrative responsibility for" the pending bankruptcy, and that the transfer analysis would not change if the case were deemed "related to" the bankruptcy instead of "arising in").

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion to dismiss (Dkt. No. 17) submitted by defendants Wilmington Trust FSB, Commonwealth Land Title Insurance Co., Fidelity National Title Insurance Co., and First American Title Insurance Co. is **DENIED**; and it is further

**ORDERED** that the Clerk of Court is directed to transfer this action to the United States District Court for the Southern District of Florida with a recommendation that the case be referred to Judge A. Jay Cristol of the United States Bankruptcy Court for the Southern District of Florida.

**SO ORDERED.**

Civ. 6064, 2009 WL 2599749, at *5 (S.D.N.Y. Aug. 24, 2009).